IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LATASHA LOPER,

    *Plaintiff*,

v.

    Civil Action No. ELH-20-3789

HOWARD COUNTY PUBLIC SCHOOL
SYSTEM, et. al.,

    *Defendants*.

**MEMORANDUM OPINION**

The self-represented plaintiff, Latasha Loper, is the parent of a Howard County public school student, C.D.[1] She filed suit against the Howard County Public School System ("HCPSS")[2] and Kathy Stump, a "Special Education Compliance Official" with HCPSS, containing a broad array of claims. ECF 3 (the "Complaint"). The Complaint is supported by several exhibits.

Ms. Loper alleges numerous violations of law, including discrimination, in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.* ("Rehabilitation Act"); conspiracy, in violation of 18 U.S.C. § 241; "corrupt activity," in violation of 18 U.S.C. § 249; violation of her Parent Participation Rights under 34 C.F.R. 300.328; violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*; violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA"); violation of the Family Educational Rights and Privacy Act ("FERPA"), 20

---

[1] I shall refer to plaintiff's son by his initials, to protect his privacy.

[2] Defendant states: "The Board of Education of Howard County operates a system of public schools often referred to as the Howard County Public School System. The Board of Education of Howard County is the official name of the school system." ECF 8-1 at 1 n.1 (citing Md. Code (2018 Repl. Vol.), § 3-104(a) of the Education Article ("E.A.")).

U.S.C. §1232g; violation of 20 U.S.C. § 7111; violation of 20 U.S.C. § 1228c; violation of 42 U.S.C. § 1981; and violation of an unspecified provision of Title 18 of the United States Code that criminalizes "[t]ampering with [r]ecords." ECF 3 at 2-4. In addition, plaintiff alleges various claims under state law. *Id* at 3.

Although plaintiff alleges various claims under federal and state law, she does not identify discrete claims or counts in the Complaint. *See id.* But, she seeks damages, "Compensatory Education" for C.D., and the revocation of Ms. Stump's "license." *Id.* at 5.

Suit was filed in the Circuit Court for Howard County. Thereafter, defendants removed the case to this Court (ECF 1), asserting jurisdiction under 28 U.S.C. § 1331. *Id.* They then moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1)[3] and Fed. R. Civ. P. 12(b)(6) (ECF 8), supported by a memorandum of law. ECF 8-1 (collectively, the "Motion to Dismiss" or "Motion"). Plaintiff opposes the Motion to Dismiss. ECF 12. Defendants replied. ECF 15. Both the Motion to Dismiss and plaintiff's opposition are supported by exhibits.

In addition, plaintiff has filed a "Motion of Opposition to Defendants['] Notice of Filing Notice of Removal", which I shall construe as a motion to remand. ECF 13 (the "Remand Motion"). Defendants oppose the Remand Motion. ECF 16. Plaintiff replied. ECF 19. Both the Remand Motion and defendants' opposition are supported by exhibits.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Remand Motion and grant the Motion to Dismiss, without prejudice.

---

[3] Although defendants invoke Rule 12(b)(1), they do not claim that the Court lacks subject matter jurisdiction. Rather, they argue that some of plaintiff's claims are subject to dismissal for failure to exhaust administrative remedies. *See* ECF 8-1 at 7.

## I. Background[4]

Plaintiff alleges that in October 2019, the "Department of Social Services received [a] Court order for [her] son [C.D.] . . . ."[5]  ECF 3 at 2.  Defendants have submitted the "Shelter Care Findings And Order" issued by the Circuit Court for Howard County on October 8, 2019, which appears to be the order referenced in the Complaint.  ECF 8-2 (the "October 2019 Order" or "Order").  The Order indicates that C.D. was "removed from the physical care and custody of Latasha Loper and placed in shelter care on October 8, 2019."  *Id.* at 2.  And, the Circuit Court found that returning C.D. to Ms. Loper's care at that time would be "contrary to the child's welfare . . . ."  *Id.* at 2.  Accordingly, the Circuit Court granted temporary custody of C.D. to the Howard County Department of Social Services ("DSS").  *Id.*

According to the Complaint, the October 2019 Order "did not take away [plaintiff's] [e]ducational decision making rights as a parent of [C.D.]."  ECF 3 at 2.  However, plaintiff submitted as an exhibit with the Complaint a letter to plaintiff from Anne Roy, of the HCPSS Office of Equity Assurance, dated November 13, 2020 (ECF 3-1, the "November 2020 Letter").  It reflects that after HCPSS learned of the October 2019 Order, it appointed "an educational surrogate" for C.D.  ECF 3-1 at 1.  As addressed, *infra*, it seems that HCPSS subsequently

---

[4] In recounting the factual background, I rely on plaintiff's allegations, to the extent I can decipher them.  As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit.  *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).  The Court may also consider documents attached to the Complaint or Motion, "so long as they are integral to the complaint and authentic."  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Throughout the opinion, I cite to the electronic pagination.  The electronic pagination does not always correspond to the page numbers that appear on the parties' submissions.

[5] The Complaint does not specify C.D.'s age.  But, court records indicate that he turned eighteen years old in early August 2021.  ECF 8-1 at 17 n.10.  Nevertheless, plaintiff's son was a minor during the relevant period.

3

rescinded the appointment of the educational surrogate, although the date of the rescission is not clear.

In addition, plaintiff alleges that Ms. Stump "deliberately misconstrued the Court Order." ECF 3 at 2.  But, it is not clear what role, if any, Ms. Stump played in the decision of HCPSS to appoint an educational surrogate for C.D.

Moreover, plaintiff seems to allege that Ms. Stump "used" the October 2019 Order to prevent plaintiff from seeking relief from HCPSS for prior alleged misconduct as to C.D.  *Id.*; *see id.* at 3.  In particular, plaintiff has attached correspondence from a legal services attorney to the HCPSS Superintendent, dated December 5, 2019 (ECF 3-5), in which the attorney asserted that earlier in 2019, C.D. was wrongfully disciplined and removed from school following a "'physical attack'" on another student.  *Id.* at 1.  Plaintiff alleges that Ms. Stump prevented the attorney's letter "from reaching" the HCPSS Superintendent (ECF 3 at 2-3) and claims that Ms. Stump "refused to correct the matter until June 2020 . . . ."  *Id.* at 3.

In addition, Ms. Loper alleges that she sought a "Due Process" hearing during the 2018-2019 school year for violations of IDEA, and claims denial of a Free Appropriate Public Education ("F.A.P.E.").  ECF 3 at 4.  C.D. was due to receive an independent educational evaluation ("IEE") in August 2020, to be conducted by an independent third party.  *Id.*  Ms. Stump transmitted C.D.'s educational records to the third party without Ms. Loper's consent.  *Id.*  According to plaintiff, that disclosure violated several federal and state laws, including FERPA.

On September 19, 2020, plaintiff filed a "'Discrimination Complaint'" with the HCPSS Office of Equity Assurance.  ECF 3-1 at 1.  According to Ms. Roy's November 2020 Letter, plaintiff's Discrimination Complaint concerned two instances of alleged misconduct: (1) the release of C.D.'s school records to the "independent evaluator for conducting educational

assessments," and (2) the "misinterpretation" of the October 2019 Order, which "result[ed] in the appointment of an educational surrogate and potentially den[ied] [plaintiff] educational rights." *Id.*  The Discrimination Complaint alleged discrimination on the basis of race and disability.  *Id.*

HCPSS investigated plaintiff's allegations.  *See id.*  As to the claim regarding the disclosure of C.D.'s school records, Ms. Roy explained, *id.* at 1-2: "[T]he sending of the documents without consent was a mistake that violated HCPSS Policy 9050.  As a result, the violation will be addressed administratively and in accordance with HCPSS Policy . . . ."  *Id.*

With respect to the appointment of an educational surrogate for C.D., Ms. Roy stated that the "HCPSS general counsel" rendered the decision based on its review and interpretation of a "document" received from DSS, which presumably pertained to the 2019 Court Order granting DSS temporary custody of C.D.  *Id.* at 2.  Further, Ms. Roy explained that HCPSS subsequently reversed course and "removed the educational surrogate . . . ."  *Id.*

Ms. Roy's November 2020 Letter also summarized the investigation's findings with respect to alleged discrimination.  It stated: "While these incidents were understandably upsetting, the evidence did not support that they occurred on the basis of race and/or disability status . . . ."  *Id.*

Defendants have submitted an exhibit that shows that on October 15, 2020, plaintiff filed a "Due Process Complaint" with the Maryland Department of Education regarding HCPSS's treatment of C.D.  ECF 8-5.  According to defendants, plaintiff withdrew the Due Process Complaint two weeks later.  ECF 8-1 at 3 n.4.  Defendants cite a handwritten letter dated November 1, 2020, apparently written by Ms. Loper, to support defendants' assertion.  ECF 8-6.

In addition, defendants have submitted an order of the Circuit Court for Howard County, dated October 28, 2020 (ECF 8-3), in which the court identified "concerns about Ms. Loper's

mental health and her ability to properly care for C.D." *Id.* at 2.  Among other things, the court ordered that DSS maintain temporary custody of C.D. and that an educational surrogate be appointed for C.D.  *Id.* at 3.  Neither side has provided the Court with information regarding subsequent proceedings in State court involving C.D.

## II.  Remand Motion

In her Remand Motion, plaintiff argues that removal of the suit to this Court was improper because she did not "receive written [n]otice from defendants in accordance with 28 U.S.C § 1446(d)."  ECF 13 at 3.  That provision states: "Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded."  28 U.S.C. § 1446(d).

Defendants filed their notice of removal on December 31, 2020.  ECF 1.  In the certificate of service appended to the notice of removal, defense counsel averred that a copy of the notice was sent to plaintiff the same day, via first class mail.  *Id.* at 3.  Plaintiff filed her opposition to the Motion to Dismiss and her Remand Motion on January 25, 2021.  ECF 12; ECF 13.

Section § 1447(c) of 28 U.S.C. is pertinent.  It provides, in relevant part: "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."  *Id.*  Here, plaintiff takes issue with a procedural defect, rather than a jurisdictional one.

In this regard, it is significant that plaintiff filed the Remand Motion within the 30-day window allowed by § 1447(c).  Thus, even if defendants did not provide plaintiff with adequate

notice under § 1446(d), as she claims, she suffered no apparent prejudice.  In other words, plaintiff had notice of the removal in time to move to remand, and she has done so.

Remand on the basis of failure to comply with § 1446(d) is generally improper, absent prejudice to the plaintiff.  *See, e.g.*, *Cardoza v. Med. Device Bus. Servs., Inc.*, 389 F. Supp. 3d 399, 406 (W.D. Va. 2019) (declining to remand suit where violation § of 1446(d) was *de minimis* and later cured);  *Arnold v. CSX Hotels, Inc.*, 212 F. Supp. 2d 634, 637 (S.D.W. Va. 2002) ("'Where defendants make a good faith effort to give notice, and where plaintiffs suffer no prejudice as a result of the failure of that attempt, we think that the requirements of section 1446(d) are sufficiently fulfilled to effect removal.'") (citation omitted), *aff'd*, 112 F. App'x 890 (4th Cir. 2004).  Clearly, plaintiff was not prejudiced, because she timely asserted a motion to remand, albeit on a ground that does not require a remand.

As for subject matter jurisdiction, which plaintiff does not appear to challenge, defendants' assertion of so-called federal question jurisdiction, pursuant to 28 U.S.C. § 1331, appears to be sound.  To be sure, "[t]he 'mere presence of a federal issue in a state cause of action' is not, by itself, enough to confer federal question jurisdiction."  *Vlaming v. West Point School Board*, ___ F.4th ___, 2021 WL 3699759, at *3 (4th Cir. Aug. 20, 2021) (citing *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986)).  But, the Complaint contains various claims arising under federal law.  *See Gunn v. Minton*, 568 U.S. 251, 258 (2013).  Resolution of at least some of the claims cannot be made independent of federal law.  *See Burrell v. Bayer Corp.*, 918 F.3d 372, 383 (4th Cir. 2019).  Thus, federal question jurisdiction obtains as to those claims.  *See, e.g.*, *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552 (2005).  And, the Court has discretion to exercise supplemental jurisdiction over plaintiff's State law claims, pursuant to 28 U.S.C. § 1367(a).

Accordingly, I shall deny the Remand Motion.

### III.  Motion to Dismiss

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.[6] *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Services Bd.,* 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young,* 569 U.S. 221 (2013); *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  The rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

---

[6] Defendants challenge plaintiff's IDEA and Rehabilitation Act claims under Rule 12(b)(1) on the grounds that a federal court's jurisdiction over these claims is contingent upon a plaintiff first exhausting all administrative remedies.  ECF 8-1 at 6-11.  As I explain, *infra*, this is not necessarily the case.  Further, even if the requirement were jurisdictional in nature, the standard of review would not change.  Accordingly, I will evaluate all of plaintiff's claims under Rule 12(b)(6).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.,* 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and...recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co*., 637 F.3d 435, 440 (4th Cir. 2011)

(citations omitted); see *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc*., 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In deciding a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.' " *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis in *Goodman*) (citation omitted).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

11

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

The Complaint and the Motion are each supported by multiple exhibits. All of the exhibits referenced earlier, are integral to the Complaint because they pertain to events mentioned or alluded to in the Complaint. Therefore, I may consider them. In addition, I may "take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x. 200 (4th Cir. 2016); *see* Fed. R. Evid. 201(b)(2); *see also Schultz v. Braga*, 290 F.Supp.2d 637, 651 n. 8 (D. Md. 2003) (taking judicial notice of dockets in state proceedings). Therefore, I may take judicial notice of the October 2019 Order of the Circuit Court for Howard County (ECF 8-2), as well as the order issued by that court in October 2020. ECF 8-3.

In reviewing the Motion, I am mindful that plaintiff is self-represented. Therefore, her pleadings are "liberally construed" and "held to less stringent standards than [those filed] by

lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

## B. Federal Claims

### 1. IDEA and the Rehabilitation Act

Plaintiff claims that Ms. Stump's alleged misconduct violated plaintiff's rights under the IDEA, 20 U.S.C. § 1415.[7] *See* ECF 3 at 2. "Congress enacted IDEA in 1970 to ensure that all children with disabilities are provided 'a free appropriate public education which emphasizes special education and related services designed to meet their unique needs [and] to assure that the rights of [such] children and their parents or guardians are protected.'" *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239 (2009) (cleaned up; citation omitted) (some alterations in *Forest Grove*); *see M.L. by Leiman v. Smith*, 867 F.3d 487, 493 (4th Cir. 2017); *see also Sellers v. Sch. Bd. of City of Manassas*, 141 F.3d 524, 527 (4th Cir.) ("[T]he touchstone of IDEA is the actual provision of a free appropriate public education."), *cert. denied,* 525 U.S. 871 (1998).

Section 8-401 *et seq.* of the Education Article of the Maryland Code is the Maryland corollary to IDEA. Md. Code (2018 Repl. Vol.), §§8-401 *et seq.* of the Education Article; COMAR 13A.05.01.01, *et seq.* Of import, "[t]hese statutes and regulations… do not deviate materially from their federal counterparts." *M.L.*, 867 F.3d at 493 n. 5; *see generally John A. v.*

---

[7] The IDEA "was enacted as the Education of the Handicapped Act, and was renamed the Individuals with Disabilities Education Act in 1990." *Forest Grove Sch. Dist.*, 557 U.S. at 239 n. 6.

*Bd. of Educ.*, 400 Md. 363, 929 A.2d 136, 140–43 (2007) (discussing the requirements of the IDEA and citing to its Maryland counterpart).

IDEA mandates that "all states receiving federal funds for education must provide disabled schoolchildren with a 'free appropriate public education,'" commonly referred to as a "FAPE." *J.P. ex rel. Peterson v. Cnty. Sch. Bd.*, 516 F.3d 254, 257 (4th Cir. 2008) (citation omitted). "Under the IDEA, a FAPE is defined to include 'special education and related services' that are provided 'without charge' to the child's family and that 'meet the standards of the State educational agency,'" including an "'individualized education program' (IEP) for each eligible child." *T.B., Jr. by & through T.B., Sr. v. Prince George's Cnty. Bd. of Educ.*, 897 F.3d 566, 571 (4th Cir. 2018) (citation omitted); *see* 20 U.S.C. § 1401(a).

Defendants contend that plaintiff's IDEA claim fails because plaintiff does not allege that she exhausted her administrative remedies. *See* ECF 8-1 at 7-9. Notably, the statute has an "*explicit* exhaustion requirement." *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 606 (4th Cir. 2020) (emphasis in original) (citing 20 U.S.C. § 1415(l)), *cert. denied*, No. 20-1163, 2021 WL 2637992 (U.S. June 28, 2021); *see Fry v. Napoleon Cmty. Sch.*, ___ U.S. ___, 137 S. Ct. 743, 749 (2017) (describing the requirement).

According to defendants, exhaustion of administrative remedies is a jurisdictional prerequisite to bringing a claim in federal court under the IDEA, *see* ECF 8-1 at 7, or the Rehabilitation Act, "where, as here, the gravamen of the complaint concerns IDEA rights and relief is available under the IDEA." *Id.* at 9. But, this is not necessarily correct.

Nearly twenty years ago, the Fourth Circuit described IDEA's exhaustion requirement as jurisdictional. *See M.M. ex rel. D.M. v. School Dist. of Greenville Cnty.*, 303 F.3d 523, 536 (4th Cir. 2002). "Since then, however," as Judge Blake of this Court explained, "the Supreme Court

has clarified the difference between jurisdictional requirements and mere claims processing provisions, leading at least one court to revise its prior conclusion that the IDEA conditioned federal jurisdiction on a litigant's exhaustion of administration remedies and another to reserve the question of revising its law for another day." *Southard v. Wicomico Cnty. Bd. of Educ.*, 79 F.Supp.3d 552, 556 (D. Md. 2015) (citations omitted); *see also Fry*, 137 S. Ct. at 749 (discussing IDEA's exhaustion requirement extensively without characterizing it as jurisdictional in nature).

For this reason, some judges within this district have refrained from rotely employing the exhaustion requirement under the IDEA as a jurisdictional one. *See e.g.*, *Southard*, 79 F.Supp.3d at 556; *Reid v. Prince George's Cnty. Bd. of Educ.*, 60 F.Supp.3d 601, 605 (D. Md. 2014). *But see Tawes v. Bd. of Educ. of Somerset Cnty.*, RDB-17-2375, 2017 WL 631945 (D. Md. Dec. 11, 2017) (finding that "a plaintiff's failure to exhaust administrative remedies deprives the federal courts of subject matter jurisdiction over an IDEA claim") (citing *M.M. ex rel. D.M.*, 303 F.3d at 536).

In any event, for present purposes, this debate is purely hypothetical. Defendants specify that they assert a facial challenge to this Court's jurisdiction over these claims, *see* ECF 8-1 at 5, in which case "the facts alleged are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Or, put another way, in this context "the standard of review is the same whether that challenge is deemed a motion to dismiss under Rule 12(b)(1) or [failure to state a claim under] Rule 12(b)(6)." *Reid*, 60 F.Supp.3d at 605.

As indicated, plaintiff filed a Due Process complaint with the Maryland Department of Education in October 2020. ECF 8-5. But, it appears that plaintiff subsequently withdrew that complaint (*see* ECF 8-6), and she does not assert otherwise in her opposition.

15

Moreover, I discern no basis for an IDEA claim in the Complaint. Plaintiff's broad and scattered allegations do not appear to pertain to IDEA's mandate concerning "'special education and related services.'" *Fry*, 137 S. Ct. at 748. The same is true of the Complaint to the extent that it invokes § 504 of the Rehabilitation Act, which also "protect[s] the interest" of children with disabilities in public schools. *Fry*, 137 S. Ct. at 749; *see* ECF 3 at 2, 4.

In addition, plaintiff has not indicated that she has satisfied the exhaustion requirement. Therefore, she has failed to state an IDEA claim on this basis.

### 2. FERPA

As mentioned, plaintiff claims that Ms. Stump's alleged disclosure of C.D.'s educational records to a third party, without plaintiff's consent, constituted a violation of FERPA. The HCPSS agreed with plaintiff. ECF 3-1 at 1-2. However, "FERPA's nondisclosure provisions fail to confer enforceable rights." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002); *see Gaskins v. Baltimore City Pub. Sch.*, JKB-15-2961, 2016 WL 192535, at *8 (D. Md. Jan. 15, 2016), *aff'd sub nom. Gaskins v. Abiodun*, 649 F. App'x 307 (4th Cir. 2016). Therefore, plaintiff cannot assert a claim under FERPA.

### 3. The ADA

The Complaint also invokes 42 U.S.C. 12203 (*see* ECF 3 at 2), which contains the anti-retaliation provision in Title V of the ADA ("Title V"). Section 12203(a) states: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." In other words, Title V protects individuals who are retaliated against for exercising their rights under Title I, II, or III of the ADA.

16

Title V does not have its own remedial scheme.  *See* 42 U.S.C. § 12203(c); *G. v. Fay Sch.*, 931 F.3d 1, 10–11 (1st Cir. 2019).  Thus, a Title V claim must be predicated on another section of the ADA.  *See Melerski v. Virginia Dep't of Behavioral Health & Developmental Servs.*, 4:15-CV-00039, 2016 WL 154144, at *3 (W.D. Va. Jan. 11, 2016) ("A Title V retaliation action must rest upon a previous Title's subject.") (citing *Collazo-Rosado v. Univ. of P.R.*, 775 F. Supp. 2d 376, 384 (D.P.R. 2011)).  Here, plaintiff does not allege a violation of another provision of the ADA.  Therefore, her claim under § 12203(c) fails.

### 4. Title VI of the Civil Rights Act

Ms. Loper fails to state a claim of discrimination under Title VI of the Civil Rights Act of 1964 ("Title VI"), as amended, 42 U.S.C. § 2000d *et seq.*

Title VI provides that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  42 U.S.C. § 2000d.  "A 'program or activity' is defined to include a 'local educational agency,' which is 'a public board of education or other public authority legally constituted within a State for . . . administrative control or direction of . . . public elementary schools or secondary schools . . . .'"  *Rogers v. Bd. of Educ. of Prince George's Cnty.*, 859 F. Supp. 2d 742, 747 (D. Md. 2012) (quoting 42 U.S.C. § 2000d–4a(2)(B)).  Although the Complaint invokes Title VI, it does not include any factual allegations in support of the claim.  *See* ECF 3 at 2, 4.  *See also*, *e.g.*, *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998).

The Supreme Court has said: "Title VI of the Civil Rights Act of 1964 . . . is parallel to Title IX [of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*] except that it prohibits race discrimination, not sex discrimination . . . ."  *Gebser*, 524 U.S. at 286 (emphasis added).  To

state a Title VI claim, a plaintiff must allege "'that (1) [he or] she was a student at an educational institution receiving federal funds, (2) [he or] she was subjected to harassment based on [his or] her sex [or race], (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution.'" *DJ , a Minor, by & through Hughes v. Sch. Bd. of Henrico Cnty.*, 488 F. Supp. 3d 307, 332–33 (E.D. Va. 2020) (alterations in original) (quoting *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 695 (4th Cir. 2007)).  And, of relevance here, the "'proper defendant in a Title VI case is an entity rather than an individual.'"  *DJ, a Minor, by & through Hughes*, 488 F. Supp. 3d at 333 (citation omitted).

In light of the above principles, it is clear that the Title VI claim fails, to the extent that it is lodged against Ms. Stump.  More problematic for plaintiff, the Complaint does not identify plaintiff's race, "color," or "national origin," or those of C.D.  Even if the Complaint did include such information, plaintiff nevertheless fails to allege facts that would enable the Court to reasonably infer that C.D. was subjected to severe and pervasive harassment on the basis of his race.  Accordingly, the Title VI claim fails.

### 5. Section 1981 of 42 U.S.C.

Likewise, plaintiff fails to state a claim under 42 U.S.C. § 1981, which she obliquely invokes.  *See* ECF 3 at 4.  Section 1981 provides: "'All persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, [and] give evidence . . . as is enjoyed by white citizens." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, ___ U.S. ___, 140 S. Ct. 1009, 1015 (2020) (quoting 42 U.S.C. § 1981).  "The Supreme Court has construed the statute to ban all racial discrimination in the making of public and private contracts."  *Nnadozie v. Genesis*

*HealthCare Corp.*, 730 F. App'x 151, 156 (4th Cir. 2018).  Nothing in the Complaint concerns the making of contracts.  Moreover, as mentioned, plaintiff does not specify her race or that of C.D.

### 6. Section 1228c of 20 U.S.C.

Plaintiff also references 20 U.S.C. § 1228c, albeit without any additional allegations concerning the relevance of that statute.  Section 1228c is captioned "Disclosure requirements." It provides that an "educational organization" within the meaning of the statute, "prior to enrolling a minor and prior to accepting funds for the cost of a minor's participation in an educational program operated by such organization, shall disclose" certain information "in written form to the minor or the minor's parent."  *Id.*

To my knowledge, this statute has never been cited by a court in a reported opinion for the proposition that a plaintiff may assert a private cause of action for a violation of the statute. Moreover, § 1228c explicitly defines "educational organization" to exclude "a local educational agency, State educational agency, a State department of education, or an elementary or secondary school . . . ."  *Id.* § 1228c(d)(2)(B)(i).  Therefore, I discern no basis for a claim arising under § 1228c.

### 7. Section 7111 of 20 U.S.C.

The same is true of plaintiff's invocation of 20 U.S.C. § 7111.  *See* ECF 3 at 4.  The provisions of 20 U.S.C. §§ 7111-7122 pertain to student support and academic enrichment grants. Section 7111 provides:

> The purpose of this subpart is to improve students' academic achievement by increasing the capacity of States, local educational agencies, schools, and local communities to (1) provide all students with access to a well-rounded education; (2) improve school conditions for student learning; and (3) improve the use of technology in order to improve the academic achievement and digital literacy of all students.

Plaintiff presents no cognizable claim as to that statute.

### 8. Sections 241 and 249 of 18 U.S.C.

Plaintiff seems to assert claims under criminal statutes. She cannot do so.

A civil litigant cannot assert a cause of action under federal criminal provisions. *See, e.g.*, *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal prosecution."); *Perkins v. Comm'r of United States Food and Drug Admin.*, CCB-20-3142, 2020 WL 6544834 at *3 (D. Md. Nov. 6, 2020); *Atiemo v. Proctor*, PX-16-3763, 2016 WL 7012300, at *1 (D. Md. Dec. 1, 2016); *Foster v. Howard Cmty. Coll.*, RDB-13-1395, 2014 WL 758027, at *3 (D. Md. Feb. 24, 2014).

In sum, I conclude that plaintiff has failed to state a claim under federal law.

### C.  State Law Claims

The Complaint references three provisions of Maryland law: Md. Code (2019 Repl. Vol.), § 10-910 of the Human Services Article ("H.S."); Code of Maryland Regulations ("COMAR") 13A.13.01.11; and COMAR 13A.13.01.12. ECF 3 at 2, 4. I agree with defendants that these laws have no bearing on plaintiff's allegations. *See* ECF 8-1 at 16-18.

H.S. § 10-910 prohibits interference with the State Long-Term Care Ombudsman. *See id;* H.S. § 10-901. And, the Maryland regulations concern the provision of education and related services to infants and toddlers. *See* COMAR 13A.13.01.11; COMAR 13A.13.01.12. However, at the relevant time C.D. was a teenager.

### IV.  Conclusion

For the foregoing reasons, I shall deny plaintiff's Remand Motion. ECF 13. And, I shall grant defendants' Motion to Dismiss (ECF 8), without prejudice.

Plaintiff may file an amended complaint within 28 days of the docketing of this Order, to include allegations that would, if true, establish, *inter alia*, claims under the IDEA, the Rehabilitation Act, Title VI, and/or the ADA.  If plaintiff fails to file an amended complaint within the time provided, I shall instruct the Clerk to close the case.

An Order follows.


Date: August 27, 2021                                      _____/s/_____
                                                                          Ellen Lipton Hollander
                                                                          United States District Judge